UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARIO VALDIVIEZO,                                 :

                 Petitioner,                 :          **MEMORANDUM DECISION**

        - v -                                      :                    20-CV-6355 (DC)

RAYMOND SHANLEY, Superintendent,       :

              Respondent.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:              MARIO VALDIVIEZO
                          Petitioner *Pro Se*
                          #15-A-2295
                          Eastern Correctional Facility
                          P.O. Box 338
                          Napanoch, NY 12458

                          ERIC GONZALEZ, Esq.
                          Kings County District Attorney
                          By:    Leonard Joblove, Esq.
                                 Jean M. Joyce, Esq.
                                 Assistant District Attorneys
                          350 Jay Street
                          Brooklyn, New York 11201
                                 Attorney for Respondent

CHIN, Circuit Judge:

        On April 30, 2015, following a jury trial, Petitioner Mario Valdiviezo was

convicted in the Supreme Court of the State of New York, Kings County (Del Giudice,

J.), of thirty-four counts, including two counts of use of a child in a sexual performance,

five counts of second-degree rape, five counts of second-degree criminal sexual act, nine counts of third-degree rape, twelve counts of third-degree criminal sexual act, and endangering the welfare of a child. The Appellate Division, Second Department, affirmed his convictions, *People v. Valdiviezo*, 74 N.Y.S.3d 869 (2d Dep't 2018) ("*Valdiviezo I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Valdiviezo*, 113 N.E.3d 957 (N.Y. 2018) (Stein, J.) ("*Valdiviezo II*").

On December 18, 2020, Valdiviezo filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Dkt. 1. Respondent, represented by the District Attorney of Kings County, filed its opposition to the Petition on April 23, 2021. Dkt. 6.

On October 25, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### A. *The Facts*[1]

In July of 2007, thirteen-year-old S.M. met Mario Valdiviezo, a twenty-nine-year-old father in her neighborhood -- first, when Valdiviezo brought his daughter to a "girls' night" to which S.M. was also invited, and second, when Valdiviezo came to a birthday party for S.M.'s mother. Dkt. 7 at 318-19. S.M.'s mother had previously

---

[1] The facts are drawn from the People's brief on the direct appeal to the Appellate Division, which was filed in this Court as part of Respondent's Opposition to the Petition and is supported by detailed citations to the state court record. *See* Dkt. 7 at 764-89.

2

worked with Valdiviezo, and she considered him a friend.  At the birthday party, Valdiviezo approached S.M. and asked if she would like to meet up with his daughter, whom Valdiviezo had custody of on weekends.  *Id.* at 320.  S.M. agreed and gave Valdiviezo her email address.  *Id.*  Valdiviezo and S.M. began emailing one another on a daily basis, and Valdiviezo expressed interest in S.M.'s home and school life.  *Id.* at 321.

Just before school started that fall (S.M. was entering sixth grade, *id.* at 323), S.M. received a cell phone, and the first person S.M. called was Valdiviezo.  *Id.* at 321.  Valdiviezo and S.M. began speaking regularly on the phone, and Valdiviezo ultimately asked S.M. to come to his apartment.  *Id.* at 322.[2]  The two made a plan that S.M. would skip school on September 6, 2007.  *Id.*  S.M. did not tell her parents that she was going to see Valdiviezo, and on September 6 she walked from her apartment to Valdiviezo's.  *Id.*  When S.M. arrived, Valdiviezo was there alone and he made breakfast for S.M.  *Id.* at 325.  S.M. felt nervous because Valdiviezo was much older, and she worried that her parents would find out she skipped school.  *Id.* at 324.  After S.M. finished breakfast, Valdiviezo and S.M. began kissing, and Valdiviezo engaged in sexual intercourse and oral sexual conduct with S.M.  *Id.* at 326.  S.M. had never had sex before, and the date and the incident remained vividly in her memory.  *Id.* at 328.

---

[2] Whenever S.M. spoke with Valdiviezo, they spoke in English, because S.M. did not speak or understand Spanish.  Dkt. 7 at 318.

Valdiviezo removed all of his clothing, and his tattoos, including one depicting his daughter's name in Sanskrit, were visible. *Id.* at 327.

Thereafter, Valdiviezo engaged in sexual intercourse and oral sexual conduct with S.M. at his apartment a number of times -- once at some point between September 7 and October 31, 2007, *id.* at 328, then at some point between November 1 and December 31, 2007, *id.* at 329, then another time between February 1 and March 31, 2008, *id.* at 330, and finally at some time between April 1 and May 31, 2008, *id.* at 330-31.

In June of 2008, S.M. went to live in Florida with her mother. *Id.* at 332. She briefly kept in contact with Valdiviezo by phone, but they later stopped communicating. *Id.* S.M. did not disclose her involvement with Valdiviezo to her mother because she did not think that anyone would believe her. *Id.* at 333. In June of 2009, when S.M. was fifteen years old, she returned to live in Brooklyn with her father, and reestablished contact with Valdiviezo. *Id.* at 334. S.M. often visited Valdiviezo in the mornings and skipped school. *Id.* at 335. Valdiviezo engaged in sexual intercourse and oral sexual conduct with S.M. at his apartment at some point between June 1 and July 31, 2009. *Id.* at 334.

During this time, Valdiviezo began describing to S.M. his fantasies of having "threesomes" with her and another person. *Id.* at 335. S.M. was hesitant but eventually agreed, because she thought that if she did not take part in a "threesome," then Valdiviezo would leave her. *Id.* at 335-36.

4

Between July 1, 2009 and July 31, 2009, on two separate occasions, Valdiviezo and another man engaged in a "threesome" with S.M. at Valdiviezo's apartment, in which they engaged in sexual intercourse and oral sexual conduct with S.M. *Id.* at 337. Although S.M. did not know it at the time, Valdiviezo recorded one of the incidents. *Id.* at 339. Valdiviezo had a video camera on top of his computer in his bedroom. *Id.*

In September of 2009, S.M. started eighth grade at a school near Valdiviezo's apartment. *Id.* at 344. On one day between September 1 and September 30, 2009, S.M. went to Valdiviezo's apartment; a woman answered the door and said that Valdiviezo was not home. S.M. called Valdiviezo, who told her to leave. *Id.* at 344-45. Instead, S.M. waited for Valdiviezo in the hallway, and when Valdiviezo arrived the woman left. *Id.* at 345. Valdiviezo brought S.M. inside and choked her neck, while yelling that she should have left. *Id.* Next, Valdiviezo brought S.M. into the bedroom and forced her to have anal sex with him. *Id.* at 346. S.M. was crying and said nothing. *Id.*

Afterward, S.M. stopped seeing Valdiviezo for a little while, but eventually started seeing him again. *Id.* at 346. She blamed herself for his actions in choking her and forcing anal sex upon her, believing at the time that Valdiviezo "did it because [she] got him upset." *Id.* Valdiviezo thereafter engaged in sexual intercourse and oral sexual conduct with S.M. at his apartment on several other occasions: between

5

October 1 and November 30, 2009, *id.* at 347, between December 1, 2009 and January 31, 2010, *id.* at 348, between February 1 and March 31, 2010, *id.,* and between April 1 and May 31, 2010, *id.* at 349.

During her spring break, after S.M. turned sixteen, Valdiviezo urged S.M. to participate in a sexual encounter with himself and several other men. *Id.* at 340-41. S.M. did not want to do it, but Valdiviezo said, "if you love me, you'll do it for me. You'll do anything for me. I really want this." *Id.* at 341. Valdiviezo also told S.M. that, "if you don't do it for me, you don't love me." *Id.* S.M. agreed to participate. On the day of this incident, S.M. arrived at Valdiviezo's apartment and the other men were already there. *Id.* at 342. S.M. recognized one man as a participant in a prior "threesome." *Id.* at 341. S.M. was nervous and told Valdiviezo that she did not want to go forward, but Valdiviezo said that he would not leave her side. *Id.* at 342. S.M. felt "a little more comfortable" and said "okay." *Id.* Valdiviezo and several other men engaged in sexual intercourse and oral sexual conduct with S.M. and video-recorded it without S.M.'s knowledge. *Id.* at 344.

Valdiviezo thereafter engaged in sexual intercourse and oral sexual conduct with S.M. at his apartment between June 1 and July 31, 2010, *id.* at 350, between August 1 and September 25, 2010, *id.* at 351, and between September 26 and October 15, 2010, *id.* at 352. In October of 2010, S.M. moved to Georgia to live with her godfather, and did not ever return to Valdiviezo's apartment, *id.* at 353.

In the fall of 2010, Valdiviezo met Delia Hernandez, who was S.M.'s cousin, through Facebook. *Id.* at 440. Valdiviezo and Hernandez became involved and moved in together. *Id.* In February of 2013, Hernandez and her two young daughters were living with Valdiviezo at his apartment. *Id.* at 440-41. Hernandez found a bin containing DVDs and VHS tapes in the apartment. *Id.* at 441. Hernandez played a DVD marked with three "Xs" on it and saw a video of Valdiviezo having sex with a female. *Id.* Hernandez kept watching the video, and recognized her cousin, S.M., in it. *Id.* at 442. Hernandez was "in shock," and thought that S.M. could have been under sixteen years old in the video, but she was not sure. *Id.* She left the DVD in the player and went to pick up her daughter. *Id.* at 443. When Hernandez returned, Valdiviezo was home but the DVD was gone. *Id.* Hernandez called S.M.'s mother. *Id.*

The next day, Hernandez confronted Valdiviezo about the DVD and asked him how old S.M. was when the video was made. *Id.* at 446. Valdiviezo said that S.M. was thirteen. *Id.* Valdiviezo admitted to Hernandez that he had intercourse with S.M. *Id.* Valdiviezo threatened Hernandez with "child services" and eviction. *Id.* at 464. For the next two weeks, Hernandez and Valdiviezo argued about the DVD. *Id.* at 456. During this time, Hernandez kept looking for the DVD. Then, Hernandez found the DVD in Valdiviezo's book-bag while he was in the shower. *Id.* at 446. She hid the DVD, because she wanted to take it to the police. *Id.* at 447. Valdiviezo realized that Hernandez had gone through his belongings, and he told Hernandez that he could use

7

his gun on her. *Id.* Valdiviezo left the apartment, and about twenty minutes later, Hernandez went to the police station, bringing the DVD and a hard drive that had been attached to Valdiviezo's desktop computer with her. *Id.* at 448, 1079.

On February 28, 2013, Detective William Greer of the 66th Precinct Detectives Squad met with Hernandez. *Id.* at 226. Hernandez reported that she had argued with Valdiviezo, Valdiviezo pointed a handgun at her head, and threatened to shoot her. *Id.* at 227. The argument concerned a DVD that contained a video of a sexual encounter involving Hernandez's cousin, Valdiviezo, and several other men. *Id.* at 228. Hernandez gave Detective Greer the DVD as well as the hard drive. *Id.* at 227. Hernandez said that her cousin, S.M., was about thirteen or fourteen years old at the time the video was made. *Id.* at 245. Detective Greer, Police Officer John Bolden, and Hernandez then went to Valdiviezo's apartment. *Id.* at 228-29. Hernandez showed the police where Valdiviezo had hidden the gun, under a mattress, and Detective Greer recovered the gun. *Id.* at 229.

Later that day, Detective Greer returned to Valdiviezo's apartment with Officer Bolden, Detective Solomon and Detective Talavera. *Id.* at 230. The police knocked on Valdiviezo's door and opened it with the key given to them by Hernandez. *Id.* at 231. One of the officers announced, "We're the police." Valdiviezo mumbled, "I figured you guys were coming." *Id.* Valdiviezo went with the police to the precinct, where he was placed in a conference room and one of his hands was handcuffed to a

8

bar. *Id.* at 232.  Valdiviezo asked to know why he was brought to the precinct.

Detective Greer said, "we'll talk about it," and then read Valdiviezo his *Miranda*

warnings in English, which Valdiviezo signed. *Id.* at 233, 1060.  Valdiviezo agreed to

speak with him.

Valdiviezo and Detective Greer spoke in English and Valdiviezo did not

seem to have difficulty understanding the detective. *Id.* at 234.  Nor did Valdiviezo ever

say that he did not understand the detective. *Id.*  Detective Greer questioned Valdiviezo

about the argument involving Hernandez. *Id.* at 238.  Detective Greer showed

Valdiviezo the DVD and described its content. *Id.*  Valdiviezo said that the girl in the

video was S.M., that she was sixteen, and that the encounter was consensual and legal.

*Id.* at 238.

Detective Greer then met with Detective Kimberly Marshall of the

Brooklyn Special Victims Squad and turned over the DVD and hard drive to her. *Id.* at

239.  Detective Marshall interviewed S.M., who was living in Florida, by telephone. *Id.*

at 258.  Then, Detective Marshall and Police Officer Cruz interviewed Valdiviezo at the

precinct. *Id.* at 259.

When Detective Marshall interviewed Valdiviezo, he was sitting in the

interview room with one hand cuffed to a security bar. *Id.* at 260.  She showed

Valdiviezo the Miranda warnings form that he previously signed and told him he still

had the same rights. *Id.* at 261.  Valdiviezo indicated that he would speak with her and

the two spoke in English. *Id.* Valdiviezo had no apparent difficulty communicating in English. *Id.* Valdiviezo told Detective Marshall that he and S.M. used to "mess around." *Id.* at 262. He stated that he had sex with S.M. when she was sixteen, approximately two years earlier. *Id.* at 263. Valdiviezo told the detective that he had sex with S.M. about four or five times, and that he videotaped some of these incidents. *Id.* Then, Valdiviezo made a written statement in his own handwriting, in English. Valdiviezo wrote: "I Mario, sorry. I Mario I'm sorry about all this. Sorry I videotape. Sorry I was with her, but I never hurt her. I never forced her to do anything." *Id.* at 265.

Detective Marshall obtained a search warrant for the DVD and the hard drive. *Id.* at 267. She then brought the DVD and the hard drive to the Computer Crimes Squad to be examined. *Id.* Detective Joseph Garcia, who was then with the Computer Crimes Squad, received the property. *Id.* at 299. Detective Garcia examined the hard drive but found no graphic images or videos involving a minor on it. *Id.* Detective Garcia next examined the DVD and found that it had four video files on it that matched the criteria specified by Detective Marshall. *Id.* at 300. He also found it was in a DVD-R format, which meant it could only be written once, and was not rewritable. *Id.* Detective Garcia therefore copied these files onto a new DVD, along with another file containing a report that showed the video file names as well as the date and time stamps for these files. *Id.* at 301.

10

Subsequently, Detective Marshall returned to the Computer Crimes Squad to retrieve the property. *Id.* at 267-68. She retrieved the original DVD and hard drive, as well as the copied DVD. *Id.* Gloria Esquiroz Blanco, an expert in the field of Spanish language, interpretation, and translation, translated into English and transcribed the audio recording on two files. *Id.* at 276. In her transcription, Blanco could not identify each of the various male voices, because some voices were recorded off-camera, and at some points the camera was covered. *Id.*

She noted, however, that in one of the videos, a male voice asked: "Do you know what we are talking about?" and the female voice replied: "English." One of the male voices commanded, "Suck my dick." *Id.* at 278-79. Subsequently, several male voices were speaking, and a male voice asked, "Does she speak Spanish?", and another male voice replied, "No." A male voice stated, "She doesn't speak shit." *Id.* at 281. A male voice stated, "She understands a little bit" of Spanish. *Id.* Subsequently, a male voice stated, "The tape is going to get ruined and then I won't be able to sell it." *Id.* at 282. A male voice stated, "This is better than being at the precinct giving explanations." *Id.* A male voice asked, "Sweet[ie], how old are you?" *Id.* Another male voice replied, "Sixteen," and then a male voice repeated, "Sixteen." *Id.* At a later point, male voices stated that: "We have Jamarillo here," and "also Daniel Santos," and "Raul Ignacio, Mickey . . . and myself here." *Id.* at 283.

11

In the other video, one male voice asked, "What's her name?" and another male voice stated the first name of S.M. *Id.* at 284. Subsequently, a male voice urged, "Okay, listen if we do it as we planned it, . . . like we said, you know?" *Id.* at 286. Later, another male voice stated, "This is going to be a good movie dude." *Id.* at 288. Still later, a male voice asked, "Do you speak English, man?" and a male voice answered, "Yeah." A male voice stated, "I was born in Ecuador, but I, I learned it at school here." *Id.* at 289. Valdiviezo was born in Ecuador. *Id.* at 318. Later, a male voice said, "Let me know you got home safe right?" and the female voice replied, "All right babe." *Id.* at 291. A male voice said, "Because she's not at school this week" and another male voice replied, "Oh Spring break." *Id.* A male voice stated, "It's Easter week. That's why." *Id.*

## B. *Procedural History*

### a. *State Court Proceedings*

#### 1. *The Trial Court*

Valdiviezo was charged in a one-hundred-and-seventy-four count indictment, with two counts of use of a child in a sexual performance, two counts of promoting, and two counts of possessing a sexual performance by a child, five counts of second-degree rape, and thirteen counts of third-degree rape, ten counts of second-degree criminal sexual act, and twenty-two counts of third-degree criminal sexual act, fifty-eight counts of sexual misconduct, twelve counts of second-degree sexual abuse,

and forty-six counts of third-degree sexual abuse, and one count each of third-degree

menacing and endangering the welfare of a child.  Dkt. 6 at 2-3.

At trial, S.M. -- who by then was twenty years old -- testified about her

encounters with Valdiviezo and the other men he brought into their encounters.  Dkt. 7

at 316-421.  S.M.'s mother, Badillo, testified about the friendship she had with

Valdiviezo and S.M's teen years growing up between Brooklyn and Florida.  *Id.* at 425-

31.  Hernandez also testified, telling the jury about her relationship with Valdiviezo and

her experience finding the DVD.  *Id.* at 438-74.  Detectives Greer, Marshall, and Garcia

testified for the People as well, explaining their interactions with Valdiviezo once he

was brought into the precinct and their acquisition of the files on the DVD.  *See id.* at

224-52, 255-70, 296-315.  A copy of the DVD was admitted into evidence.  *Id.* at 313.

Finally, Gloria Esquiroz Blanco, an expert in the field of the Spanish language,

transcribed what was said on the DVD and testified as to its contents.  *Id.* at 271-91.

Only Valdiviezo testified for the defense.  *Id.* at 485-545.

The jury convicted Valdiviezo on thirty-four counts:  two counts of use of

a child in a sexual performance, five counts of second-degree rape, five counts of

second-degree criminal sexual act, nine counts of third-degree rape, twelve counts of

third-degree criminal sexual act and endangering the welfare of a child.  *Id.* at 663-69.

The trial court then sentenced Valdiviezo to two fifteen-year terms on the

use of a child in a sexual performance counts, five seven-year terms on the second-

13

degree rape counts, five seven-year terms on the second-degree criminal sexual act counts, nine four-year terms on the third-degree rape counts, twelve four-year terms on the third-degree criminal sexual act counts, one year on the endangering the welfare of a child count; plus consecutive terms of post-release supervision of fifteen years on the counts of use of a child in a sexual performance, and ten years on each of the other felony counts, all to run consecutively with each other, for a total term of incarceration of 150 years. *Id.* at 684. The sentence was reduced by operation of law pursuant to Penal Law § 70.30(1)(e). *See* N.Y. Penal Law ("PL") § 70.30(1)(e)(i) (providing that the aggregate maximum term of consecutive sentences, which are determinate sentences, and which are imposed for two or more crimes, "shall, if it exceeds twenty years, be deemed to be twenty years."); *see also People v. Valdiviezo*, 74 N.Y.S.3d at 870; Dkt. 6 at 25.

## 2. *The Direct Appeal*

In April 2017, Valdiviezo, represented by counsel, appealed to the Appellate Division, Second Department, arguing that: (1) the trial court erroneously permitted the prosecutor to cross-examine Valdiviezo about his knowledge of English, by confronting him with his *pro se* legal papers; (2) the prosecutor's summation deprived him of a fair trial; (3) the best evidence rule required the original DVD depicting Valdiviezo's sexual exploitation of S.M. to be admitted in evidence, and not a copy; (4) certain counts of the indictment were duplicitous; and (5) his sentence was harsh and excessive. *Id.* at 688-755.

14

On June 13, 2018, the Appellate Division affirmed Valdiviezo's convictions and sentence. *Valdiviezo I*, 74 N.Y.S.3d at 869-70. The court held that Valdiviezo's argument that he was deprived of a fair trial due to the admission, in violation of the best evidence rule, of an authenticated copy of an original DVD was without merit. *Id.* It also found that "[t]he sentence imposed. . . . was not excessive." *Id.* at 870. Finally, the Appellate Division held that "remaining contentions either are unpreserved for appellate review or do not require reversal." *Id.*

On October 15, 2018, the New York Court of Appeals denied Valdiviezo's application for leave to appeal. *Valdiviezo II*, 113 N.E.3d 957 (Stein, J.).

### a. *State Collateral Review*

On March 21, 2018, Valdiviezo moved, *pro se*, to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. Dkt. 7 at 854-984. Valdiviezo claimed that: (1) his trial attorney was ineffective; (2) the People failed to disclose certain materials under *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady*") and *People v. Rosario*, 9 N.Y.2d 286 (1961) ("*Rosario*"); (3) his Fourth Amendment rights were violated by the seizure of items from his apartment; (4) detectives manufactured fraudulent evidence against him; (5) there was prosecutorial misconduct; (6) he is actually innocent; (7) his right to a speedy trial was violated; and (8) he was incapable of understanding or participating in the proceedings. *Id.*

15

On July 6, 2018, Valdiviezo amended his motion to vacate and included: (1) additional allegations of ineffective assistance of counsel; (2) lack of an arrest warrant; (3) defects in the felony complaint; and (4) lack of subject matter jurisdiction. *Id.* at 1107-48.

On February 5, 2019, the Kings County Supreme Court (Del Giudice, *J.*) denied Valdiviezo's § 440.10 motion in all respects.  The court held that the claims were procedurally barred and meritless in any event.  *Id.* at 1251-62.

On February 5, 2019, Valdiviezo sought leave to appeal the trial court's § 440.10 decision to the Appellate Division.  *Id.* at 1264.  By order dated September 16, 2019, the Appellate Division (Brathwaite-Nelson, *J.*) denied the application.  *People v. Valdiviezo*, 2019 WL 4437725, No. 2019-06062 (2d Dep't Sept. 18, 2019).[3]

On January 10, 2020, proceeding *pro se*, Valdiviezo filed a motion for a writ of error, *coram nobis* in the Appellate Division alleging ineffective assistance of appellate counsel.  Dkt. 7 at 1285-93.  On August 12, 2020, the Appellate Division denied

---

[3] The claims in Valdiviezo's § 440.10 motion are therefore exhausted, because a § 440.10 petitioner may not seek relief in the Court of Appeals if the Appellate Division has denied leave to appeal under C.P.L. § 450.15(1).  *See Safran v. New York*, No. 1:22-CV-3177 (NRM), 2023 WL 3306932, at *2 (E.D.N.Y. May 6, 2023) ("Because a denial by the Appellate Division for leave to appeal a trial court's denial of an applicant's § 440 motion 'is not reviewable by the New York Court of Appeals,' the claims raised in a such a motion are considered exhausted.").

the motion. *People v. Valdiviezo*, 126 N.Y.S.3d 685 (2d Dep't 2020).  On September 9,

2020, Valdiviezo sought leave to appeal from the Court of Appeals, Dkt. 7 at 1348,

which the court denied on November 19, 2020. *People v. Valdiviezo*, 36 N.Y.3d 932 (N.Y.

2020).

### b.  Proceedings in this Court

On December 18, 2020, proceeding *pro se*, Valdiviezo filed the Petition,

arguing that:  (1) the trial court permitted the admission of collateral, extrinsic and

prejudicial evidence; (2) the prosecutor deprived Valdiviezo of a fair trial by making

denigrating arguments in summation; (3) the court erroneously permitted the People to

admit into evidence copies of Valdiviezo's recorded sexual encounters with the victim,

instead of the original recordings violating the best evidence rule and denying

Valdiviezo his rights to due process and a fair trial; (4) certain counts of the indictment

were duplicitous and should be dismissed; (5) his sentence was excessive; (6) his trial

attorney was ineffective; (7) he is actually innocent; (8) he was incompetent to stand

trial; (9) certain evidence should have been disclosed to the defense under *Brady* and

*Rosario*; (10) his Fourth Amendment rights were violated by his arrest and the seizure of

evidence from his apartment; (11) detectives offered fraudulent evidence of Valdiviezo's

guilt; (12) there was prosecutorial misconduct outside of the prosecutor's arguments during

summation; (13) there were statutory defects in the felony complaint; and (14) the People

violated his speedy trial rights by misrepresenting their readiness for trial within six months.  Dkt. 1.

On April 23, 2021, the District Attorney's Office filed its opposition to the Petition.  Dkt. 6.  On May 20, 2021, Valdiviezo filed his reply.  Dkt. 9.  On August 23, 2021, Valdiviezo filed his supplemental reply.  Dkt. 14.

On October 25, 2023, the case was reassigned to the undersigned.

*DISCUSSION*

A.      *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was  . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d

123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington,* 562 U.S. at 103); *see also Wetzel v. Lambert,* 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington,* 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway,* 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray,* 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell,* 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)). In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz,* 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker,* 458 F.3d

19

130, 138 (2d Cir. 2006)).  A petitioner's failure to comply with a state procedural rule

qualifies as such an adequate and independent state ground, provided that (1) the state

court actually "relied on the procedural bar as an independent basis for its disposition

of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state

procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466

U.S. 341, 348 (1984).

   The Second Circuit has "held repeatedly that the contemporaneous

objection rule" -- that state appellate courts will review only those errors of law that are

presented contemporaneously such that the trial court is "reasonably prompted" to

correct them -- "is a firmly established and regularly followed New York procedural

rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases).  Hence, the

Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling

that the failure of a petitioner to object at trial rendered a claim unpreserved for

appellate review.  *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the

denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's

attention a claim that he later attempted to advance on appeal).  If a claim is

procedurally barred pursuant to an independent and adequate state rule, a federal

habeas court may not review it on the merits, unless the petitioner demonstrates (1)

"cause for the default and actual prejudice as a result of the alleged violation of federal

law," or (2) "that failure to consider the claims will result in a fundamental miscarriage

of justice." *Coleman*, 501 U.S. at 750.

**B.**     *Analysis*

      In the Petition, Valdiviezo contends that:  (1) the trial court permitted the

admission of collateral, extrinsic and prejudicial evidence; (2) the prosecutor's

comments in summation deprived him of a fair trial; (3) the court violated the best

evidence rule when it admitted a copy of the DVD at issue into evidence; (4) certain

counts of the indictment were duplicitous; (5) his sentence was excessive; (6) that his

trial attorney was ineffective; (7) he is actually innocent; (8) he was incompetent to stand

trial; (9) certain evidence should have been disclosed to the defense under *Brady* and

*Rosario*; (10) his Fourth Amendment rights were violated by his arrest and the seizure of

evidence from his apartment; (11) detectives offered fraudulent evidence of Valdiviezo's

guilt;[4] (12) the prosecutors committed misconduct at trial; (13) there were statutory defects

in the felony complaint; and (14) his speedy trial rights were violated.  Dkt. 1.

    *a.  The Admission of Collateral, Extrinsic, and Prejudicial Evidence*

      Valdiviezo argues that that he was denied a fair trial because the trial

court erroneously permitted the prosecutor to cross-examine him about his knowledge

of English by confronting him with his *pro se* legal papers, some of which pertained to a

---

[4]     This claim appears to relate to the claims of actual innocence and prosecutorial
misconduct.  Accordingly, I do not address the fraudulent evidence claim as a standalone claim,
but rather as part of the actual innocence and prosecutorial misconduct claims.

civil suit he had brought against the case detectives, thus permitting extrinsic, collateral, and prejudicial material to be put before the jury.  *Id.* at 18-19.

The Appellate Division rejected this claim, finding that it was "either unpreserved or d[id] not require reversal."  *Valdiviezo I,* 74 N.Y.S.3d at 870.  Regardless of the ground on which the Appellate Division denied this claim, it fails here.  As a threshold matter, this claim is not cognizable on habeas review because it is not grounded in federal law.  *See Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir. 1988) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error.").  In any event, this argument fails on the merits, because the court's ruling was not erroneous, and thus habeas relief is not warranted.  Valdiviezo was charged with two counts of use of a child in sexual performance, which requires a finding that the "defendant, knowing the content and character of the sexual performance, employed, authorized, or induced the [victim] to engage in a sexual performance."  *Roe v. Barad,* 647 N.Y.S.2d 14 (2d Dep't 1996).  At trial, Valdiviezo claimed that he did not speak English well, and S.M., who only spoke English, did not fully understand him.  *See* Dkt. 7 at 518 ("You would speak to [S.M.] in English; right?" "Whatever she understood from me.").  The trial court therefore reasonably found that the probative value of the evidence outweighed its prejudicial effect, because it showed that Valdiviezo was lying about a material element of the crime for which he was accused.  Dkt. 7 at 521.  This claim accordingly fails.

### b. *The Prosecutor's Comments During Summation*

Valdiviezo next argues that the prosecutor's comments during summation deprived him of a fair trial by characterizing him as a liar, attempting to shift the burden of proof, appealing to jury sympathy, exceeding the bounds of acceptable advocacy, improperly vouching for S.M., denigrating him, and depriving him of due process.  Dkt. 1 at 19-20.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone . . . in an otherwise fair proceeding."  *United States v. Young*, 470 U.S. 1, 11 (1985).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted).  "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "Whether a prosecutor's improper remarks result in a denial of due process depends upon whether the remarks caused 'substantial prejudice' to the defendant."  *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989) (citation omitted).  To determine whether "substantial prejudice" exists, the court "must assess how prejudicial the prosecutor's conduct was, what measures, if any, the trial court used to cure the prejudice, and whether conviction was certain absent the prejudicial conduct."  *Gonzalez*, 934 F.2d at 424.

23

Valdiviezo argues that the prosecutor improperly (1) commented on his civil lawsuit when she argued that he had "two million reasons to lie" to the jury and was "using the system" to make money; (2) suggested that Valdiviezo wanted a "keepsake" when he kept the DVD but got rid of his computer and camera; (3) argued that if Valdiviezo was testifying truthfully, then the jury would have to discount S.M.'s testimony; (4) argued that S.M. had nothing to gain by testifying against Valdiviezo other than shame and humiliation in talking about what happened to her; and (5) vouched for S.M. by arguing that if S.M. had invented a story "out of whole cloth" about a three-year relationship with defendant, she could have made it simpler. Dkt. 1 at 19-20.

The Appellate Division rejected this claim, finding that it was "either unpreserved or d[id] not require reversal." *Valdiviezo I,* 74 N.Y.S.3d at 870. Regardless of the ground on which the Appellate Division denied this claim, it fails here because none of the prosecutor's statements were improper. First, the prosecutor was entitled to argue that Valdiviezo was "using the system" to make money. *See Portuondo v. Agard,* 529 U.S. 61, 73 (2000) (a prosecutor may stress a defendant's interest in the outcome of trial during summation). Second, the prosecution's argument as to why Valdiviezo kept the DVD was in response to defense counsel's summation argument that "it [does not] make any sense that he would hold that but get rid of the computer," Dkt. 7 at 579 and was accordingly proper. *See People v. Gillespie,* 831 N.Y.S.2d 83, 84 (2d Dep't 2007)

24

(noting that statements during summation are permissible if they are "fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation"). Third, the prosecutor's comments as to S.M's testimony did not constitute improper vouching, but rather constituted fair arguments as to why S.M. should be believed, in response to defense counsel's summation insinuating that she could not get her story straight, Dkt. 7 at 571; *People v. Spivey*, 759 N.Y.S.2d 456, 456 (1st Dep't 2003) ("Rather than asserting his personal belief in the credibility of his witnesses, the prosecutor made fair arguments as to why these witnesses should be believed and as to why defendant's attacks on their credibility should be rejected.")

In any event, even assuming arguendo that any of these comments were improper, they were not so flagrant as to deny Valdiviezo a fair trial. *Bentley v. Scully*, 41 F.3d 818, 824-25 (2d Cir. 1994) (where evidence of guilt was "overwhelming," prosecutor's brief summation comments were harmless error). The evidence of guilt here was overwhelming -- S.M. testified at length as to Valdiviezo's abuse, Hernandez testified as to Valdiviezo's attempts to hide the DVD from her, the detectives testified as to Valdiviezo's admissions he had sexual encounters with S.M., and the jury saw proof of the abuse on the DVD. Accordingly, any error resulting from the prosecutor's comments in summation was harmless. This claim therefore fails.

### c. The Best Evidence Rule

Valdiviezo also contends that the court erroneously permitted the People to admit into evidence copies of his recorded sexual encounters with S.M., instead of the original recordings violating the best evidence rule and denying him his rights to due process and a fair trial. Dkt. 1 at 20-21. The Appellate Division rejected this claim on the merits, finding that "[Valdiviezo's] contention that he was deprived of a fair trial due to the admission, in violation of the best evidence rule, of an authenticated copy of an original DVD on which the [Valdiviezo] had recorded videos of the victim, himself, and other men engaging in sexual acts, is without merit." *See Valdiviezo I,* 74 N.Y.S.3d at 869. This determination is entitled to "substantial deference," *Fischer,* 780 F.3d at 560, and will not be overturned unless Valdiviezo can establish that the state court's conclusion was "unreasonable," *see* 28 U.S.C. § 2254(d).

As a threshold matter, this claim is not cognizable on habeas review because it is not grounded in federal law. *See U.S. ex rel. Banks v. Henderson,* 394 F. Supp. 1316, 1318 (S.D.N.Y. 1974) (the best evidence rule is "not a topic for federal habeas"). In any event, this argument fails on the merits. The best evidence rule "simply requires the production of an original writing where its contents are in dispute and sought to be proven." *Schozer v. William Penn Life Ins. Co. of N.Y.,* 644 N.E.2d 1353, 1355 (N.Y. 1994). New York Civil Practice Law and Rule ("CPLR") 4539 provides, however, "that copies of original documents made in the regular course of business, if

26

properly identified, are 'as admissible in evidence as the original.'" *People v. Roach*, 649 N.Y.S.2d 607, 610 (4th Dep't 1996).  That section of the CPLR "recognizes the fact that the modern business practice is to make photographic reproductions in the regular course of business and that photographic reproductions so made are sufficiently trustworthy to be treated as originals for the purpose of the best evidence rule." *Id.*

At trial, Detective Garcia testified that he copied the files from the original DVD onto a new DVD so he would work with the original DVD as little as possible, so that it would not get damaged.  Detective Garcia testified that if "something happen[ed] to it, [or if it got] scratched, then it can't be used again. You won't be able to view anything that's on it.  We work with copies." Dkt. 7 at 301.  Accordingly, copies of the DVD were made in the regular course of business, and the best evidence rule was not violated.  This claim therefore fails.

### d. *The Counts in the Indictment*

For Valdiviezo's next claim, he argues that the testimony of the complainant did not relate to a single incident for each count, thus rendering certain counts in the Indictment duplicitous. Dkt. 1 at 21-22.  The Appellate Division rejected this claim, finding that it was "either unpreserved or d[id] not require reversal." *Valdiviezo I*, 74 N.Y.S.3d at 870.  Regardless of the ground on which the Appellate Division denied this claim, it fails here.  As a preliminary matter, generally "the mere presence of duplicitous charges cannot provide a basis for habeas relief." *Santilus v. Heath*, No. 11-

CV-5703 (ERK) (LB), 2014 WL 5343817, at *2 (E.D.N.Y. Oct. 20, 2014).  Rather, "[i]mpermissible duplicity" may rise to the level of a violation of the Sixth Amendment where "where multiple distinct crimes are combined into one count of an indictment and where that combination actually prejudices the defendant with regard to those concerns." *Id.*  "Even if a count is valid on its face, it is nonetheless duplicitous where the evidence presented to the grand jury or at trial makes plain that multiple criminal acts occurred during the relevant time period, rendering it nearly impossible to determine the particular act upon which the jury reached its verdict." *People v. Jean*, 985 N.Y.S.2d 669, 671 (2d Dep't 2014).  "[A] duplicitous indictment may impair a defendant's federal 'rights to notice of the charges against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution.'" *Williams v. Lempke*, No. 11-CV-2504 (PGG) (JLC), 2012 WL 2086955, at *20 (S.D.N.Y. June 1, 2012), *report and recommendation adopted*, No. 11-CV-2504 PGG, 2014 WL 5035219 (S.D.N.Y. Sept. 29, 2014).

Valdiviezo argues that S.M.'s testimony did not support proof of each charged crime because each challenged count was premised upon a single act occurring within a specified period of time, and S.M. conflated multiple instances of sexual assault in her testimony, rendering the counts duplicitous.  Dkt. 1 at 21-22.  But S.M. provided detailed testimony as to one sexual encounter with Valdiviezo during each of the challenged time periods, and, accordingly, this claim fails.  For example, the prosecutor

asked S.M. "on or about and between September 7 of 2007 and October 31st of 2007, did anything happen between you and the defendant during that time period?"  Dkt. 7 at 328.  S.M. testified that "[m]e and him were having oral and vaginal sex." *Id.*  In response to the prosecutor's question about what she meant by "oral sex," she clarified: "His penis went into my mouth.  And my mouth went onto his penis." *Id.*  While S.M. used both past continuous tense and past tense during her testimony about the September 2007 to October 2007 period, this testimony did not insinuate that Valdiviezo and S.M. had multiple sexual encounters during that specific time period.  *People v. Gannon*, 104 N.Y.S.3d 770, 777 (3d Dept' 2019) (counts were not duplicitous because testimony did not "make [] plain that multiple criminal acts occurred during the relevant time period").

Indeed, the jury was instructed that each count pertained to a single sexual encounter.  *See* Dkt. 7 at 634 ("[o]ne, that on or about, or between, a certain period of time, as designated in the verdict sheet, . . . the defendant engaged in sexual intercourse with [S.M.] . . . and two, that on *each occasion* under consideration, the defendant was 18 years of age or more and that [S.M.] was less than 15") (emphasis added).  *See Turner v. Bell*, No. 18-CV-2539 (ERK), 2021 WL 1565373, at *7 (E.D.N.Y. Apr. 21, 2021) (finding that an assertion of duplicity was "belied by the record [because] the judge repeatedly instructed the jury that the charged counts related only to single, specific acts of penetration.").  This claim therefore fails.

e. *The Excessiveness of the Sentence*

Valdiviezo next claims that his sentence was excessive. Dkt. 1 at 22. This claim also fails. The Appellate Division rejected this claim on the merits, finding that the sentence imposed was not excessive. *Valdiviezo I*, 74 N.Y.S.3d at 870. The Appellate Division's conclusion is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned unless Valdiviezo can establish that the decision was unreasonable, *see* 28 U.S.C. § 2254(d). Valdiviezo fails to meet this burden.

There is "[n]o federal constitutional issue . . . presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). New York law provides that the aggregate maximum term of consecutive sentences, which are determinate sentences, and which are imposed for two or more crimes, "shall, if it exceeds twenty years, be deemed to be twenty years." PL § 70.30(1)(e)(i). Valdiviezo was sentenced to consecutive terms in prison as follows: two fifteen-year terms on the use of a child in a sexual performance counts, five seven-year terms on the second-degree rape counts, five seven-year terms on the second-degree criminal sexual act counts, nine four-year terms on the third-degree rape counts, twelve four-year terms on the third-degree criminal sexual act counts, one year on the endangering the welfare of a child count; plus consecutive terms of post-release supervision of fifteen years on the counts of use of a child in a sexual performance, and ten years on each of the other felony counts. Dkt. 6 at 3. These terms were reduced,

however, pursuant to PL § 70.30(1)(e)(i), and accordingly, Valdiviezo will serve no more than twenty years in prison for his convictions in this case. Dkt. 6 at 25. This was within the range prescribed by state law. Accordingly, Valdiviezo's sentence was not unreasonable. Valdiviezo's excessiveness argument therefore fails.

### f. *The Remaining Claims*

Valdiviezo also argues a plethora of other claims: he received ineffective assistance of trial counsel, he is actually innocent, he was incompetent to stand trial, certain *Brady* and *Rosario* material should have been disclosed, his Fourth Amendment rights were violated by his arrest and the seizure of evidence in his apartment, the detectives handling his case offered fraudulent evidence of his guilt, the prosecutor committed misconduct, there were defects in the felony complaint, and his speedy trial rights were violated. Dkt. 1. The Kings County Supreme Court (Del Giudice, J.) considered these claims in denying Valdiviezo's amended § 440.10 motion and concluded that they were procedurally barred pursuant to CPL § 440.10(2)(a) and (c). Dkt. 7 at 1254. The court further noted that Valdiviezo's contentions with respect to these claims were without merit. *Id.*

Habeas relief is thus not available to Valdiviezo for these claims. For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar." *Whitley v. Ercole,* 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v.*

*Bartlett,* 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Kings County Supreme Court clearly and expressly stated that each of these claims was procedurally barred.  Dkt. 7 at 1254.

Moreover, Valdiviezo has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered.  *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000) (citations omitted); *Coleman,* 501 U.S. at 748; *Carvajal v. Artus,* 633 F.3d 95, 104 (2d Cir. 2011).  Even if these claims were not procedurally barred, as discussed below, they still fail on the merits.

### i.  *Ineffective Assistance of Counsel*

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so."  *Harrington,* 562 U.S. at 105 (citations omitted).  Therefore, "[t]he operative question" when a federal court reviews a state

court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective-assistance-of-counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance. *See Alvarez*, 125 N.E.3d at 120.

Valdiviezo contends that his counsel was ineffective for a number of reasons, including that his counsel was disinterested and unprepared and failed to call certain witnesses. Dkt. 1 at 23-25. But Valdiviezo's ineffective assistance claims are plainly meritless and contradicted by the record. As the state court held, "counsel's performance at the hearings, pre-trial applications, during the trial and at sentencing" contradict any claim that trial counsel was "disinterested" or failed to provide adequate representation. Dkt. 7 at 1258. Indeed, Valdiviezo offers no evidence to overcome the heavy burden that trial counsel's conduct constituted sound trial strategy. *See Santana*

*v. Capra*, 284 F. Supp. 3d 525, 541 (S.D.N.Y. 2018) (quoting *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)) ("Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance."). Valdiviezo's ineffective assistance claim accordingly fails.

### ii. *Actual Innocence*

Valdiviezo next claims that he is actually innocent. Dkt. 1 at 37-38. This claim is frivolous. To prevail on an actual innocence claim, a habeas petitioner must present the court "with new reliable evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). But Valdiviezo has not put forward any evidence of his innocence that was discovered after trial. Rather, he argues that the detectives in his case procured false evidence which was admitted against him at trial -- an allegation he fails to back up with any proof. As the state court observed in rejecting this claim in Valdiviezo's § 440.10 motion, the evidence against Valdiviezo at trial was "overwhelming." Dkt. 7 at 1261. Accordingly, this claim fails on the merits in any event.

### iii. *Valdiviezo's Competency to Stand Trial*

Valdiviezo's claim that he was incompetent to stand trial is also meritless. Valdiviezo argues that he was incompetent to stand trial and that the court should have held a competency hearing because he was receiving mental health supervision while incarcerated prior to trial. Dkt. 1 at 38-39. But "[t]he test of competency to stand trial is concerned not so much with whether a defendant is afflicted with mental illness, *per se,*

34

but with whether he possesses sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." *U. S. ex rel. Bornholdt v. Ternullo,* 402 F. Supp. 374, 376 (S.D.N.Y. 1975) (internal quotation marks and citation omitted). The record here is clear that Valdiviezo understood the proceedings against him -- indeed, Valdiviezo testified at length about the crime for which he was accused. As the state court observed in its decision on Valdiviezo's § 440.10 motion, "[t]his allegation by the defendant is also belied by the record, as well as this Court's own observations and interactions with the defendant on the record. This Court had ample opportunity to observe the defendant. . . . [and] [b]ased on the defendant's own conduct, this Court has no reason to doubt the defendant's mental competence." Dkt. 7 at 1257. Valdiviezo's claim that he was incompetent to stand trial therefore fails.

### iv. The Brady and Rosario Claims

Valdiviezo's claims that the prosecution failed to disclose *Brady* and *Rosario* material to the defense, *see* Dkt. 1 at 25-26, also fail. As the state court noted, the record here is clear that the disputed material *was* disclosed to the defense. Valdiviezo's *Brady* and *Rosario* claims are therefore meritless.

### v. The Fourth Amendment Claim

Valdiviezo also argues that his Fourth Amendment rights were violated by his arrest and the seizure of evidence from his apartment. Dkt. 1 at 27, 35-36. But

"where the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on

the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).  A petitioner has not

received a full and fair opportunity to litigate his claims, and thus may obtain habeas

relief, only if he either establishes that "'the state has provided no corrective procedures

at all to redress the alleged [F]ourth [A]mendment violations,' or, 'if the state has

provided a corrective mechanism,' that the petitioner 'was precluded from using that

mechanism because of an unconscionable breakdown in the underlying process.'"

*Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (quoting *Capellan v. Riley*, 975 F.2d 67, 70

(2d Cir. 1992)).

       Valdiviezo has had a full and fair opportunity to litigate his Fourth

Amendment claim -- indeed, in addition to trial and his direct appeal, he filed two post

judgment motions.  Valdiviezo therefore cannot show that he did not receive a full and

fair opportunity to litigate his Fourth Amendment claim.  *See Capellan*, 975 F.2d at 70.

The Second Circuit has long held that New York's procedure for litigating Fourth

Amendment claims is facially adequate.  *Id.* at 70 n.1 (collecting cases).  Further, to

establish an unconscionable breakdown, Valdiviezo would have to show that the trial

court and the Appellate Division "failed to conduct a reasoned method of inquiry into

relevant questions of fact and law," *Hicks*, 43 F. Supp. 3d at 231, which is a "stringent

standard," *Clanton v. LaClair*, No. 14-CV-4551 (ER) (MHD), 2015 WL 13832649, at *11

(S.D.N.Y. Nov. 4, 2015), *report and recommendation adopted*, 2019 WL 4688725 (S.D.N.Y.

Sept. 25, 2019).  Valdiviezo has made no such showing here.  Accordingly, this claim

fails.

### vi.  *Prosecutorial Misconduct*

Nor does Valdiviezo's prosecutorial misconduct claim have merit.  To

obtain habeas corpus relief on grounds of prosecutorial misconduct, petitioner must

demonstrate "that he suffered actual prejudice because the prosecutor's [conduct] had a

substantial and injurious effect or influence in determining the jury's verdict." *Davis v.*

*Kelly*, 2 F. Supp. 2d 362, 367 (W.D.N.Y. 1998) (citing *Bentley v. Scully,* 41 F.3d 818, 824 (2d

Cir. 1994)).  Valdiviezo's prosecutorial misconduct claim, to the extent it is based on

conduct beyond the prosecutor's comments discussed above, is premised on his claim

that the detectives procured false evidence against him, and the prosecution offered that

evidence at trial.  *See* Dkt. 1 at 33-34.  Because there is no evidence that the detectives

procured or the prosecutors offered false evidence, this claim fails.

### vii.  *Defects in the Felony Complaint*

Valdiviezo's next argument -- that there were defects in the felony

complaint, Dkt. 1 at 39-42 -- also fails.  "[W]hile a felony complaint serves as the basis

for the commencement of a criminal action. . . . that instrument is superseded, and thus

rendered legally irrelevant for purposes of challenging a subsequent conviction, by the

grand jury's decision to indict." *Carmel v. Graham*, No. 6:17-CV-6050 (CJS), 2020 WL
6505168, at *17 (W.D.N.Y. Nov. 5, 2020).  Because the felony complaint here was
superseded by an indictment, Valdiviezo's claim regarding defaults in that complaint
has no merit.

### viii.   Speedy Trial

Finally, Valdiviezo's speedy trial arguments lack merit.  He argues that
because the prosecution misrepresented its readiness for trial within six months, and
trial was delayed another ten months, his right to a speedy trial pursuant to CPL § 30.30
was violated.  Dkt. 1 at 36.  As the state court noted, Valdiviezo's argument that "the
prosecution was in violation of the defendant's speedy trial rights, pursuant to
CPL § 30.30, [] fails as the statutory period for a timely prosecution did not lapse."  Dkt.
7 at 1261.  In any event, this is a state law claim that is not cognizable on habeas review.
*See Singh v. Fischer*, No. 03-CV-4128 (JG), 2004 WL 2999106, at *4 n.4 (E.D.N.Y. Dec. 29,
2004) (declining to review a speedy trial right claim under CPL § 30.30 because
petitioner's "claim that the state court erred in its decision regarding his speedy trial
rights under New York state law is not cognizable on habeas review"  (citing 28 U.S.C. §
2254(a))); *Parrish v. Lee*, No. 10-CV-8708, 2015 WL 7302762, at *11 (S.D.N.Y. Nov. 18,
2015) (noting that § 30.30 is "purely a creature of New York state statute and does not
protect a federal constitutional right" and, "[t]herefore, a § 30.30 claim is not cognizable
in a federal habeas case").

38

Valdiviezo's federal constitutional speedy trial claim also lacks merit.[5]  In determining whether a pre-trial delay violates the Sixth Amendment, courts look to the factors set forth in *Barker v. Wingo,* 407 U.S. 514, 530-32 (1971): "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant." *United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir. 1992) (quoting *Barker,* 407 U.S. at 530-32).  Valdiviezo makes no effort to explain how the *Barker* factors weigh in favor of a speedy trial violation here. Valdiviezo's conclusory argument provides no detail and no support to show that the delay violated his Sixth Amendment right to a speedy trial.  This claim therefore fails.

## CONCLUSION

Valdiviezo has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is denied.  Additionally, I decline to issue a certificate of appealability because Valdiviezo has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

---

[5] Although the state court only analyzed the merits of Valdiviezo's statutory speedy trial claim, *see* Dkt. 7 at 1261, Valdiviezo raised -- in a conclusory fashion -- a constitutional claim in his § 440 motion, *see id.* at 970.  The court nevertheless held that the motion as a whole established "no basis upon which the relief sought may be granted," *id.* at 1254, and therefore apparently adjudicated the constitutional speedy trial claim as meritless.

The Clerk of the Court shall enter judgment accordingly and close this case.  The Clerk of Court shall also mail copies of this memorandum decision and the judgment to Valdiviezo at the address set forth above.

SO ORDERED.

Dated:     New York, New York
           March 27, 2024

DENNY CHIN
United States Circuit Judge
Sitting By Designation

40